# LEONARD R. HIGDON

*Attorney at Law*

6565 South Dayton Street, Suite 3650   Greenwood Village, CO  80111
Phone (303) 740-1966 Facsimile (303) 474-3884

March 25, 2022

**Suzanne Goodspeed**
**Member, Aspen Academy Board of Trustees**
**Board Chair**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

c/o Goodspeed Merrill
7800 East Union Ave., Suite 600
Denver, CO 80237

**Wayne Guerra, M.D.**
**Member, Aspen Academy Board of Trustees**
**Advancement Committee**
**Strategic Initiatives Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**James Johnson**
**Member, Aspen Academy Board of Trustees**
**Safety & Security Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Jack Keenan**
**Member, Aspen Academy Board of Trustees**
**Finance & Audit Committee**
**Investment Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Plaintiffs' Exhibit 8**
**220325 Dr. Meier letter to Aspen Academy Board**

Aspen Academy
March 21, 2022
Page 2 of 19

**Lew Kling**
**Member, Aspen Academy Board of Trustees**
**Trustee & Governance Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Corinne Lengsfeld**
**Member, Aspen Academy Board of Trustees**
**Safety & Security Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Brian Meegan**
**Member, Aspen Academy Board of Trustees**
**Compensation Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**James Park**
**Member, Aspen Academy Board of Trustees**
**Advancement Committee (Development)**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Kristina Scala**
**Member, Aspen Academy Board of Trustees**
**Aspen Academy Founder & President**
**Aspen Academy Registered Agent**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Arjun Sen**
**Member, Aspen Academy Board of Trustees**
**Advancement Committee (Branding)**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

Aspen Academy
March 21, 2022
Page 3 of 19

**Brad Tucker**
**Member, Aspen Academy Board of Trustees**
**Trustee & Governance Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Lori Taylor**
**Member, Aspen Academy Board of Trustees**
**Advancement Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Tim Taylor**
**Member, Aspen Academy Board of Trustees**
**Advancement Committee**
**Strategic Initiatives Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**Darryl Watters**
**Member, Aspen Academy Board of Trustees**
**Finance & Audit Committee**
**Investment Committee**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

**George Sparks**
**Member, Aspen Academy Board of Trustees**
**Past Chair**
c/o Aspen Academy
5859 S. University Blvd.
Greenwood Village, CO 80121

Re: ██████████

Please be advised that this law firm has been engaged to represent Dr. Katia Meier, and specifically, to address certain, as of yet, unaddressed concerns regarding her minor child, ██████ Meier, a 7th grade student at Aspen Academy. To orient you to the present issues that are outlined more thoroughly below, Dr. Meier desires your prompt collective attention to the following issues:

Aspen Academy
March 21, 2022
Page 4 of 19

(1) October 6, 2021 Letter of No Trespass to Dr. Meier; and
(2) COVID testing upon ▮▮▮▮by Aspen Academy.

As you will read below, it was previously requested by Dr. Meier in writing on October 7, 2021 that you be informed by Ms. Kristine Scala of these concerns. As there has been no response from the Board following that request, this letter is transmitted in the manner it is, to ensure your receipt and understanding of the serious nature of the issues, and to give you a final and fair opportunity to respond to a concerned parent in Dr. Meier.  By way of relevant background, I am providing you a chronology of events is as follows.

On October 5, 2021 at about 8:15 AM, Dr. Meier was present on campus for legitimate purposes related to ▮▮▮▮'s care, and was confronted by a then unidentified Aspen Academy school staff person (later determined to be **Justin Wimbish**).  The two briefly discussed the mask ▮▮▮▮was wearing at school that day.  The conversation occurred in the hallway outside ▮▮▮▮classroom while ▮▮▮▮was present.  Notable, is that during this conversation, Mr. Wimbish did not maintain 6 feet of distance from Dr. Meier, or ▮▮▮▮

On October 5, 2021 at 9:44 AM, Dr. Meier sent an email (Attachment 1A) to **Kristina Scala** reporting a problem about the conduct of the unidentified Aspen Academy school staff person and requesting a meeting to address the same.  At approximately 10:30 AM, Ms. Scala sent a non-responsive reply email (Attachment 1B) to Dr. Meier.   At 3:42 PM, Dr. Meier sent a follow-up email (Attachment 1C) to Ms. Scala requesting that she address and respond to specific informational requests.   To date, Dr. Meier has not received the courtesy of any response from anyone at Aspen Academy to those questions she posited in her email.

Further, on that day (October 5, 2021) at about 4:00 PM, Dr. Meier had a conversation with **Corey Sampson**, an Aspen Academy school staff person, about the mask ▮▮▮▮was wearing that day. The conversation occurred in the Aspen Academy parking lot and ▮▮▮▮was again present, as both Dr. Meier and ▮▮▮▮▮▮ were sitting in her car.   Mr. Sampson also failed to maintain 6 feet of distance from Dr. Meier as he stood next to her car door talking through the car window.  Near the end of the conversation, Corey Sampson requested a sample of the proper mask ▮▮▮▮was supposed to be wearing at his parents' direction.  Dr. Meier provided him an example of that mask, as requested.

The next day, on October 6, 2021, at about 8:15 AM, Dr. Meier had another conversation with Corey Sampson.  This conversation occurred in the hallway near the entry of Aspen Academy. Dr. Meier requested that Mr. Sampson return the sample of the mask she had furnished to him on October 5, 2021, and Corey Sampson returned the sample mask to her.  Mr. Sampson then told Dr. Meier she could not violate school policies (which he did not identify), and in response Dr. Meier requested a copy of the school policy(ies) to which Mr. Sampson was referring.  Mr.

Aspen Academy
March 21, 2022
Page 5 of 19

Sampson's only response to Dr. Meier's request was to say that "You will be hearing from us soon." in a tone and manner of speaking that was defensive, if not confrontational.

Later that day, at 1:25 PM, Ms. Scala emailed a **"Letter of No Trespass"** (Attachment 2A) from Aspen Academy to Dr. Meier with no specific explanation of the facts which caused it, only vague conclusory allegations. At approximately 2:00PM, Dr. Meier then received a hard copy of the Kristina Scala Letter of No Trespass *delivered via courier to her professional medical office*. This caused Dr. Meier both distress and embarrassment as this was not only unexpected, but unwarranted in light of the established email communications link Kristina Scala had routinely used to communicate with Dr. Meier throughout the school year.

The following day, October 7, 2021 at 4:51 PM, Dr. Meier emailed a response (Attachment 3) to the October 6, 2021 Letter of No Trespass from Aspen Academy. Dr. Meier's October 7, 2021 email to Kristina Scala demanded certain actions, answers to specific questions, and *concluded by requesting that Ms. Scala deliver a copy of it to you, each member of the Aspen Academy Board of Trustees*.   As previously stated, there has been no response from anyone at Aspen Academy to the information requests or the questions raised in Dr. Meier's October 7, 2021 email (Attachment 3).

On October 26, 2021, at 3:33 PM, Dr. Meier sent an email to Kristina Scala (Attachment 4) again reporting a problem about the mask ███ was wearing at Aspen Academy and requesting answers to the still unanswered questions from Dr. Meier's October 5, 2021 email (Attachment 1C) and Dr. Meier's October 7, 2021 email (Attachment 3).   That request, too, was ignored.

With no response from Kristina Scala to either Dr. Meier's October 7, 2021 email (Attachment 3) or Dr. Meier's October 26, 2021 email (Attachment 4), Dr. Meier has continued to comply with the "Letter of No Trespass" despite the same being unwarranted, without any meaningful justification, and profoundly offensive to Dr. Meier personally and professionally.

On February 9, 2022 at 1:37 PM, Dr. Meier sent an email (Attachment 5A) to Ms. Scala and others (1) stating her objections to ███ being tested for COVID at Aspen Academy without her prior written consent, and (2) inquiring if ███ had already been subjected to COVID testing at Aspen Academy.

On February 11, 2022, at 11:20 AM, Ms. Scala sent an email (Attachment 5B) to Dr. Meier advising only (1) that ████ ████ has been removed from the COVID testing program at Aspen Academy, but conspicuously declined to respond to Dr. Meier's inquiry (2) whether ███ had already been subjected to COVID testing at Aspen Academy without consent.

On February 12, 2022 at 6:44 PM, Dr. Meier sent an email (Attachment 5C) to Ms. Scala inquiring for a second time if ███ was subjected to COVID testing at Aspen Academy.  Again, Dr. Meier's

Aspen Academy
March 21, 2022
Page **6** of **19**

reasonable request was ignored by Ms. Scala and there has been no response from anyone else at Aspen Academy either.

Aspen Academy issued the October 6, 2021 Letter of No Trespass (Attachments 2A and 2B) without any meeting between Ms. Scala and Dr. Meier as Dr. Meier had requested in writing the day before. There was not the slightest courtesy to Dr. Meier in effort to permit her to respond to any (as of yet unknown) allegation giving rise to the letter. Rather, Ms. Scala appears to have summarily determined to exclude Dr. Meier from campus (and effective participation in her son's on-campus activities) with a single email. There was no due diligence inquiry, no effort to determine facts or other relevant circumstances, and no reference to any articulated policy giving rise to this seemingly arbitrary and capricious decision. All efforts by Dr. Meier to participate in any form of dialogue have been contemptuously ignored.

Dr. Meier has never been given opportunity to share facts (or even perspective) concerning the conversations she had with Aspen Academy staff persons on October 5 and 6, 2021 that presumably resulted in Ms. Scala's extreme and baseless restriction upon Dr. Meier's ability to be present upon school grounds. Similarly, Dr. Meier's other important questions and concerns have been ignored in a similarly dismissive, extremely disrespectful manner.

Neither Kristina Scala, nor any member of the Aspen Academy Board of Trustees, nor anyone else on behalf of Aspen Academy has responded to Dr. Meier's October 5, 2021 email to Kristina Scala (Attachment 1C).

Neither Kristina Scala, nor any member of the Aspen Academy Board of Trustees, nor anyone else on behalf of Aspen Academy has responded to Dr. Meier's October 6, 2021 email to Kristina Scala (Attachment 3).

Neither Kristina Scala, nor any member of the Aspen Academy Board of Trustees, nor anyone else on behalf of Aspen Academy has responded to Dr. Meier's October 7, 2021 email to Kristina Scala (Attachment 4) which specifically requested that Kristina Scala deliver a copy to each member of the Aspen Academy Board of Trustees.

More than five months have now passed since Dr. Meier's October 7, 2021 email to Kristina Scala and the Aspen Academy Board of Trustees (Attachment 4).

Six weeks have now passed since Dr. Meier's February 9, 2022 email to Kristina Scala inquiring the first time whether ▇▇▇▇ ▇▇▇▇ was subjected to non-consensual COVID testing at Aspen Academy (Attachment 5A).

Almost six weeks have passed since Dr. Meier's February 12, 2022 email to Kristina Scala inquiring for a second time if ▇▇▇▇ ▇▇▇▇ was subjected to non-consensual COVID testing at Aspen Academy (Attachment 5C).

Aspen Academy
March 21, 2022
Page 7 of 19

Dr. Meier is, by this correspondence to each of you, demanding that this governing body address the refusal of Aspen Academy to respond in a reasonable, timely manner to her legitimate concerns, questions, and demands about the Letter of No Trespass and whether ▬▬▬ was subjected to non-consensual COVID testing by Aspen Academy. To that end, I expect to receive your written response to this letter on or before noon Mountain time on Friday, April 1, 2022.

*Within your response, please furnish a complete written response to each and every one of the questions presented in Dr. Meier's Attachments 1C, 3, 4, 5A and 5C.*

*In addition, please respond in writing to each of the following.*

*The following text blocks which cite "Nonprofit P & P" are verbatim quotations from Principles & Practices for Nonprofit Excellence in Colorado, 4th Edition, published by Colorado Nonprofit Association, copyright 2018.*

Laws, regulations, and best practices hold nonprofits to standards of transparency, effectiveness, and efficiency. *Principles & Practices for Nonprofit Excellence in Colorado* is a powerful and useful tool for all nonprofits as they strive to reach and maintain these standards.

Nonprofit P & P, Introduction page.

Colorado nonprofits should take advantage of an invaluable resource called *A Guide for Colorado Nonprofit Organizations* (2007, Continuing Legal Education in Colorado, Inc.). More than 20 of Colorado's top corporate attorneys, many of whom specialize in representing Colorado nonprofit organizations, wrote this publication, which is updated regularly.

Nonprofit P & P, page 4.

A nonprofit *must* comply with federal, state, and local ethics rules in working with government employees and public officials. With respect to government employees and officials, this includes rules on providing gifts, travel, honoraria, or event tickets; and employment of former elected officials. (Colorado Constitution Article XXIX; House of Representatives Rule XXIII - Code of Official Conduct; Standing Rules of the Senate, 34 to 43).

Nonprofit P & P, page 9.

Nonprofits should establish clear policies pertaining to communication practices and procedures including outreach efforts, frequency of communications, graphic standards, rules around print and electronic communications, approval for institutional facts and messaging, and expected responses for internal or external concerns. These policies should be included in the written communications plan. Nonprofits should establish thoughtful internal communications strategies — with clear, defined channels that respond to the needs and interests of staff members and key volunteers — to allow for effective conflict resolutions, and the creation of a positive, productive organizational culture.

Aspen Academy
March 21, 2022
Page 8 of 19

Nonprofit P & P, page 11.

*Please furnish a copy of all Aspen Academy policies and procedures related to dispute or conflict resolutions involving Aspen Academy personnel. Aspen Academy personnel includes, but is not limited to, administrators, faculty, personnel, members of the Board of Trustees, officers, employees, and volunteers.*

Nonprofits should establish and implement clear policies regarding confidentiality of certain communications, images, and personal information. Sensitive, private, or confidential information should not be shared without express consent. Occasionally pictures of participants, volunteers, or served community members may need express consent to be shared.

Nonprofit P & P, page 11.

*Please furnish a copy of all Aspen Academy policies and procedures regarding confidentiality of communications, images, and personal information related to discipline of a parent with a child enrolled in Aspen Academy.*

*Please furnish a list of all persons to whom the October 6, 2021 Letter of No Trespass or its subject matter was communicated, with details as to who communicated to whom, when, where, and why.*

A nonprofit should have a written procedure that stipulates who has the authority to make public statements on behalf of the organization, and the procedures for developing the statements. Board members, staff, and volunteers should be trained on the organization's statements, positions, policies, and procedures.

Nonprofit P & P, page 13.

*Please furnish a copy of all Aspen Academy statements, positions, policies, and procedures related to staff and personnel guidelines for interaction and communication with a parent or guardian of a child enrolled in Aspen Academy. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

In order to demonstrate transparency and accountability, maintain good relationships, and help an organization achieve its mission, nonprofits should engage stakeholders through clear, easily accessible, and up-to-date information. Opportunities to solicit feedback should be targeted to key audiences identified in the communications plan. For example, surveys, and other webforms, community meetings, and other methods should be easily accessible by outside audiences through the organization's outlets of communication. Staff contact information will assist in these interactions. In the case of negative feedback, organizations should have a written grievance policy

Aspen Academy
March 21, 2022
Page 9 of 19

in order to promptly and respectfully respond to grievances or complaints from stakeholders. These practices help foster dialogue and mitigate potential negative impact to the organization and its stakeholders.

> Nonprofit P & P, page 13.

> *Please furnish a copy of all Aspen Academy statements, positions, policies, and procedures related to staff and personnel guidelines for interaction and communication with a parent or guardian of a child enrolled in Aspen Academy that apply when the parent has communicated a problem, issue, grievance, or complaint. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

> *Please furnish a copy of all Aspen Academy statements, positions, policies, and procedures related to staff and personnel guidelines for interaction and communication with a parent or guardian of a child enrolled in Aspen Academy that apply when the parent requested information from, or a meeting with, Aspen Academy personnel. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

A nonprofit should make information about its operations, including its governance, finances, programs, and activities, widely available to the community. Full disclosure of executive compensation, including compensation received from related entities of the organization, must be disclosed on the organization's IRS form 990. A nonprofit should consult legal and financial professionals to determine the requirements for public disclosure. At a minimum, a nonprofit (unless specifically exempt) must make certain data available to the public including:

> annual tax return (usually an IRS Form 990, 990-EZ, 990-N or 990-PF) for the most recent three years (IRC § 6104);

> if the organization has unrelated business income, annual tax return (usually an IRS Form 990-T) for the most recent three years; and

> IRS Form 1023, Application for Recognition of Tax-Exempt Status, including any papers submitted in support of the Application and any letter or other document issued by the IRS with respect to the Application (IRC § 6104; 990).

> Nonprofit P & P, page 14.

> *Please furnish a copy of each and all Aspen Academy IRS Forms 990, 990-EZ, 990-N, 990-PF, 990-T, or 1023 filed for each of the last three years, along with each and all filed or pending amendments or restatements of same.*

> *Please furnish a copy of all Aspen Academy policies and procedures related to accounting for any and all forms of income, revenue, compensation, or remuneration received by Aspen Academy directly or indirectly, including, but not limited to, funds or*

*in-kind contributions from <u>each and all government sources</u>, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund.*

*Please furnish a copy of all Aspen Academy accounting or financial statements from January 1, 2019 to date for any and all forms of income, revenue, compensation, or remuneration received by Aspen Academy directly or indirectly, including, but not limited to, funds or in-kind contributions from <u>each and all government sources</u>, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund.*

A nonprofit should create a workplace culture where employees, volunteers, board members, served communities and groups feel connection, listened to, authentic engagement, and meaning, regardless of differences.

Nonprofit P & P, page 16.

*Please furnish a copy of all Aspen Academy policies and procedures related to how Aspen Academy personnel helps a parent with a child enrolled in Aspen Academy feel "... connection, listened to, authentic engagement, and meaning, regardless of differences ..." after that parent has communicated a problem, issue, grievance, or complaint, or requested information from, or a meeting with, Aspen Academy personnel. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

*Please furnish a copy of all statements, incident reports, investigative records, and any other documentation (including audio or video surveillance records) related to Dr. Meier's interactions with Aspen Academy personnel from and after October 1, 2021, to date. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

Valuing the communities and constituents served is a critical element in equity, diversity, and inclusion thinking. Through the meaningful engagement with communities as full partners, the ability to innovate collaboratively and facilitate social change is increased. Board members, employees, and volunteers should utilize equitable channels to hear voices from and facilitate dialogue with community and constituent partners authentically. This practice allows the space for the external perspectives to influence the internal organizational work.

Nonprofit P & P, page 16-17.

Aspen Academy
March 21, 2022
Page 11 of 19

*Please furnish a copy of all Aspen Academy policies and procedures related to how Aspen Academy personnel have been trained to consider the position and perspective of a parent with a child enrolled in Aspen Academy after that parent has communicated a problem, issue, grievance, or complaint, or requested information from, or a meeting with, Aspen Academy personnel. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

*Please furnish a copy of all statements, incident reports, investigative records, and any other documentation (including audio or video surveillance records) related to consideration by Aspen Academy personnel of Dr. Meier's position and perspective from and after October 1, 2021, to date. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

Studies show that creating organization change for equity, diversity, and inclusion begins at the top of any organization. Executive Directors and board members can demonstrate their commitment to equity, diversity, and inclusion by engaging the board in conversations about the topic and gaining their support. Authentic conversations with employees, volunteers, and members of the served community can result in powerful change and understanding of the organization.

Nonprofit P & P, page 17.

*Please furnish a copy of all Aspen Academy policies and procedures related to how members of the Aspen Academy Board of Trustees have exercised oversight of Aspen Academy officers and staff in response to a parent with a child enrolled in Aspen Academy after that parent has communicated a problem, issue, grievance, or complaint, or requested information from, or a meeting with, Aspen Academy personnel. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

*Please furnish a copy of all statements, incident reports, investigative records, and any other documentation (including audio or video surveillance records) related to consideration by members of the Aspen Academy Board of Trustees of Dr. Meier's position and perspective from and after October 1, 2021, to date. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

A nonprofit must openly communicate the annual reporting information contained on its Form 990 to constituents and others who request such information (IRC § 6104; 990). In addition, nonprofits should share, at least annually, an overview of data regarding sources of revenue, functional expenditures, and related outcomes. This is often presented within an annual report.

Nonprofit P & P, page 24.

Aspen Academy
March 21, 2022
Page 12 of 19

*Please furnish a copy each Aspen Academy Annual Report from and including 2019 to date.*

A nonprofit must comply with specific conditions placed upon donations [C.R.S. § 15-1-1103 through 15-1-1109; C.R.S. § 6-16- 111(1)(i)]. Donated funds must be clearly categorized based upon the existence of donor restrictions in the organization's financial statements and communications in accordance with the donor or grantor wishes, stipulations, or intent (990). Donor restrictions may include restrictions for a specific purpose, or a specific time frame.

Nonprofit P & P, page 24.

*Please furnish a written statement as to whether Aspen Academy Annual Reports and Financial Statements from and including 2019 to date characterize as "donated funds" any funds or in-kind contributions received by Aspen Academy, directly or indirectly, from each and all government sources, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund.*

*In the event Aspen Academy Annual Reports and Financial Statements from and including 2019 to date do not characterize as "donated funds" any funds or in-kind contributions received by Aspen Academy, directly or indirectly, from each and all government sources, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund, then please specify exactly how such funds or in-kind contributions are characterized.*

A nonprofit should have a system in place that allows individuals to report financial and other misconduct, and must ensure that there is no consequence for doing so -- commonly referred to as a "whistleblower policy" (18 USC § 1107 – a.k.a. Sarbanes-Oxley; 990).

Nonprofit P & P, page 25.

*Please furnish a copy of all Aspen Academy policies and procedures related to "whistleblowers" and how members of the Aspen Academy Board of Trustees exercise oversight of Aspen Academy officers and staff when a whistleblower reports to Aspen Academy personnel a problem, issue, grievance, or complaint, or requests information from, or a meeting with, Aspen Academy personnel, e.g. unauthorized practice of medicine by Aspen Academy personnel. Aspen Academy personnel includes, but is not limited to, members of the Board of Trustees, officers, employees, and volunteers.*

Aspen Academy
March 21, 2022
Page 13 of 19

A nonprofit should devise and implement internal control procedures, such as dual controls and segregation of duties, in order to ensure accurate information and to help prevent fraud.

> Nonprofit P & P, page 26.

> *Please furnish a copy of all Aspen Academy policies and procedures related to the process of Aspen Academy issuing a "Letter of No Trespass" and how members of the Aspen Academy Board of Trustees exercise oversight of Aspen Academy officers and staff when they consider issuing a "Letter of No Trespass".*

> *Please furnish a written statement as to whether Aspen Academy officers or staff personnel have the authority to issue a "Letter of No Trespass" without prior notification and approval from the Aspen Academy Board of Trustees.*

A nonprofit must comply with specific conditions placed upon donations [C.R.S. § 15-1-1103-1109; C.R.S. § 6-16- 111(1)(i)]. Donated funds must be clearly categorized per applicable accounting standards as unrestricted, temporarily restricted, or permanently restricted in the organization's financial statements and communications, and in accordance with the intent and wishes of the donor or grantor (990).

> Nonprofit P & P, page 31.

> *Please furnish a written statement as to whether Aspen Academy Annual Reports and Financial Statements from and including 2019 to date properly characterize the restrictions on any funds or in-kind contributions received by Aspen Academy, directly or indirectly, from each and all government sources, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund.*

> *Please furnish a written statement which specifies exactly how Aspen Academy Annual Reports and Financial Statements from and including 2019 to date characterize any funds or in-kind contributions received by Aspen Academy, directly or indirectly, from each and all government sources, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund.*

A nonprofit should decline gifts (cash or non-cash) that would bring about adverse conditions for the organization or its constituents and gifts given for purposes outside the scope of its mission. Nonprofits should implement clear policies, based on the organization's exempt purpose, to determine whether accepting a gift would compromise the ethics, financial circumstances, program focus, or other interests of the organization.

Aspen Academy
March 21, 2022
Page 14 of 19

Nonprofit P & P, page 33-34.

*Please furnish a copy of all Aspen Academy policies and procedures related to the process of Aspen Academy accepting any funds or in-kind contributions, directly or indirectly, from each and all government sources, e.g. Colorado Department of Education, Colorado Department of Health and Environment, the federal Coronavirus Aid Relief and Economic Security Act (the CARES Act) and Elementary and Secondary School Emergency Relief (ESSER) Fund, and explain in writing how members of the Aspen Academy Board of Trustees exercise oversight of Aspen Academy officers and staff when Aspen Academy considers accepting such funds.*

Nonprofit corporations are created under state law (the Colorado Revised Nonprofit Corporation Act or CRNCA) (C.R.S. § 7-121- 101 to 137), and for the most part, state law determines how they are governed. In addition to what is required by state law, a nonprofit's articles of incorporation, bylaws, and board policies may provide more specific policies and procedures to govern the organization's activities.

Members of the governing body, typically the board of directors or board of trustees, must be aware of the legal fiduciary duties related to their work: the duty of care, the duty of loyalty, and the duty of obedience. Colorado law requires directors to discharge their duties to the nonprofit in good faith; with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and in a manner they reasonably believe to be in the best interests of the nonprofit (C.R.S § 7-128-401). Fiduciary duties are intended to ensure a high degree of care and complete loyalty to the nonprofit to protect charitable assets held for the benefit of the public rather than for individuals.

Nonprofit P & P, page 35.

*Please furnish a copy of Aspen Academy's articles of incorporation, bylaws, Board policies and procedures, and any and all other Aspen Academy policies and procedures in effect from and after January 1, 2020 to date.*

Meeting the duty of care includes both decision-making and oversight responsibilities, and is fulfilled by activities such as attending board meetings regularly, entering discussions, reading minutes, understanding the organization's programs, maintaining a careful oversight of finances, and questioning unclear or troubling activity (C.R.S. § 7-128-401).

Directors meet the duty of loyalty by placing the interests of the organization before their own interests or those of related parties and avoiding the use of organizational opportunities for personal gain (C.R.S. § 7-128-401). Under CRNCA, a related party includes a spouse, a descendant, an ancestor, a sibling, the spouse or descendent of a sibling, or an estate or trust in which the director or a related party has a beneficial interest. In addition, a related party includes

Aspen Academy
March 21, 2022
Page 15 of 19

any entities for which a related party serves as an officer or director, or in which a related party has a financial interest.

Directors meet the duty of obedience by complying with federal, state, and local law, adhering to the organization's governing documents, and guarding the organization's mission. This not only refers to the letter of the law, but also the spirit of the law. Nonprofit organizations are held to a high public standard and boards should comply accordingly. Boards should stay informed on updates to the law and compliances practices within the organization.

Nonprofit P & P, page 36.

*Please furnish a copy of all Aspen Academy policies and procedures related to Aspen Academy Directors and Officers insurance from January 1, 2020 to date.*

*Please furnish a true and complete copy of each and all policies of Aspen Academy Directors and Officers insurance in effect from January 1, 2020 to date.*

A Colorado nonprofit corporation must keep minutes of all board's meetings, along with a record of any actions taken by the board without a meeting, as permanent records of the corporation (C.R.S. § 7-136-101; 990). Minutes of board meetings and records of actions taken without a meeting should be recorded contemporaneously and should include the date, time, attendees, motions, votes, and the name of the presiding officer. The minutes should be signed by the elected secretary

Nonprofit P & P, page 41.

A board may act without a meeting through electronic voting or otherwise written voting if certain statutory criteria are met (C.R.S. § 7-128-202).

Nonprofit P & P, page 42.

*Please furnish a copy of each of Aspen Academy's minutes of Board meetings and records of actions taken without a meeting from and after January 1, 2020.*

A nonprofit should have a mandatory written policy or schedule on document retention and destruction with guidelines for handling all types of documents, including electronic files and voicemails. The policy should also include procedures for backing up or archiving documents, and regularly checking the reliability of the document handling procedures. A nonprofit organization must retain documents involved in litigation or a government investigation (18 USC § 1519 – a.k.a. Sarbanes-Oxley; 990).

Nonprofit P & P, page 5.

*Please furnish a copy of each of Aspen Academy's policies and procedures related to document retention and destruction from and after January 1, 2020.*

Aspen Academy
March 21, 2022
Page 16 of 19

### *Take Notice*

>*Please retain and do not destroy any document related in any way to* █████ █████*, Dr. Meier, and Greg Meier from and after January 1, 2020.*

>*Please retain all electronic data, e-mail, audio or video recording, text message of or by any employee, personnel, administrator, director or trustee of Aspen Academy, related in any manner to* ████████ *or Dr. Meier, and specifically related to the events in question.*

*Please furnish a copy of each document, electronic data file, email, audio or video recording, text message of or by any employee, personnel, administrator, director or trustee of Aspen Academy, related in any manner to* ██████████ *or Dr. Meier, and specifically related to the events in question and after January 1, 2020 including, but not limited to, all documents related to* ██████████ *being tested or injected for COVID or any other medical conditions or procedures.*

### *Conclusion*

All of the material facts as I understand them are outlined in this letter. Dr. Meier has been harmed by the conduct of various Aspen Academy personnel. The facts outlined above reflect a callous and reckless disrespect by Aspen Academy of Dr. Meier. This conduct is unwarranted, unprovoked, and unreasonable.

No due diligence investigation into the allegations made by Aspen Academy staff against Dr. Meier can be deemed fair or reasonable without her first being given the due process of an unbiased investigator objectively documenting what she had to say about the events of October 5 and 6, 2021. No reasonable person would conclude that Dr. Meier's conduct on October 5 and 6, 2021 even remotely justified Aspen Academy's Letter of No Trespass depriving Dr. Meier of the opportunity to be present on the campus where her child is educated and receives acculturation.

Aspen Academy's Letter of No Trespass response to Dr. Meier's request for a meeting with Kristina Scala to discuss a problem with the conduct of the staff is a gross injustice which has caused real harm to Dr. Meier. Equally important is the real harm done in the eyes of her son, █████ who is reminded of what Aspen Academy thinks of his mother each day when she takes him to or from school and she cannot go onto the school property, so ████ must be dropped or picked up off-campus and then he walks to or from the school.

The Aspen Academy pattern and practice of bullying Dr. Meier off of the school campus month after month while ignoring her written concerns, demands, and questions is not a fair or reasonable process of dispute resolution. It is outrageous by any reasonable standard and unworthy of the Aspen Academy creed "Be Kind".

Aspen Academy
March 21, 2022
Page 17 of 19

We are providing Aspen Academy this opportunity to attempt reasonable explanation of its mistreatment of Dr. Meier, and the harm it has caused to her and to ▮▮▮▮▮

I expect to receive your written response to this letter on or before noon Mountain time on Friday, April 1, 2022.

Yours truly,

Leonard R. Higdon

Cc:    Dr. Katia Meier
       Greg Meier

Encl.:  Schedule of attachments

Aspen Academy
March 21, 2022
Page 18 of 19

## SCHEDULE OF ATTACHMENTS

| | |
|---|---|
| **Attachment 1A:** | October 5, 2021 at 9:44 AM, email from Dr. Meier to Kristina Scala reporting a problem about the conduct of the unidentified Aspen Academy school staff person and requesting a meeting |
| **Attachment 1B:** | October 5, 2021 at 10:30 AM, non-responsive reply email from Kristina Scala to Dr. Meier |
| **Attachment 1C:** | October 5, 2021 at 3:42 PM, follow-up email from Dr. Meier to Kristina Scala requesting answers to specific questions (to which there has been no response from anyone at Aspen Academy, except Attachments 2A and 2B below) |
| **Attachment 2A:** | October 6, 2021 at 1:25 PM, Kristina Scala email Letter of No Trespass from Aspen Academy to Dr. Meier |
| **Attachment 2B:** | October 6, 2021 at about 2:00 PM, hard copy of Aspen Academy Letter of No Trespass to Dr. Meier delivered via courier at Dr. Meier's medical practice office |
| **Attachment 3:** | October 7, 2021 at 4:51 PM, Dr. Meier email response (which specifically requests delivery of a copy to each member of the Aspen Academy Board of Trustees) to the October 6, 2021 Letter of No Trespass from Aspen Academy (to which there has been no response from anyone at Aspen Academy) |
| **Attachment 4:** | October 26, 2021 at 3:33 PM, Dr. Meier email to Kristina Scala again reporting a problem about the mask ▓▓▓▓▓▓▓ was wearing at Aspen Academy and requesting answers to the still unanswered specific questions from October 5 and 6, 2021 (Attachments 1A and 1C ) (to which there has been no response from anyone at Aspen Academy) |
| **Attachment 5A:** | February 9, 2022 at 1:37 PM, email from Dr. Meier to Kristina Scala and others regarding (1) Dr. Meier's objections to ▓▓▓▓▓▓▓ being tested for COVID at Aspen Academy, and (2) inquiring if ▓▓▓▓ was subjected to COVID testing at Aspen Academy |
| **Attachment 5B:** | February 11, 2022 at 11:20 AM, email from Kristina Scala to Dr. Meier advising only (1) that ▓▓▓▓▓▓▓ has been removed from COVID testing |

Aspen Academy
March 21, 2022
Page 19 of 19

at Aspen Academy, but not responsive to (2) whether ███ was subjected to COVID testing at Aspen Academy

Attachment 5C:    February 12, 2022 at 6:44 PM, Dr. Meier email to Kristina Scala inquiring for a second time if ███ was subjected to COVID testing at Aspen Academy
(to which there has been no response from anyone at Aspen Academy)

## *ATTACHMENT 1A*

Attachment 1A: October 5, 2021 at 9:44 AM, email from Katia Meier to Kristina Scala
reporting a problem about the conduct of the unidentified Aspen Academy school staff person
and requesting a meeting

Begin forwarded message:

**From:** Katia Meier <kmeier@clearskymedical.com>

**Subject:** █████████
**Date:** 5. October 2021 at 09:44:14 GMT-6
**To:** Kristina Scala <kristina.scala@aspenacademy.org>
**Cc:** Greg Meier <hi.gregmeier@gmail.com>

Hi Kristina,

I need your urgent assistance with our Son ████.

I told him that he was not allowed to wear any of the paper masks for medical reasons.
His dad is on the same page with him wearing the masks I provide for him.  I bought him
plenty of cloth masks, and they are in his bag, I make sure of it every morning when I
drop him off. Today even though he told me he had the cloth mask in his bag, I found
him wearing the paper mask when I brought him his water bottle, despite me telling
him not too.

He acts as if the teachers are pressuring him into wearing the paper mask. Are you
creating an environment that makes him feel safer going against his parents advice, a
parent who is, as he knows very well, at the forefront of treating patients every day for
Covid. If so, why is that?

I think we should have a meeting about this, including ████ very soon. He needs to
hear from you that he can wear the masks I provide for him, so he feels safe to do so.

My Son's health and wellbeing is paramount above all else to me and I'll do anything to
keep him safe.

Thank you for your assistance.

Sincerely,

Katia Meier MD

# *ATTACHMENT 1B*

Attachment 1B: October 5, 2021 at 10:30 AM, non-responsive reply email from
Kristina Scala to Katia Meier

Begin forwarded message:

**From:** Kristina Scala <kristina.scala@aspenacademy.org>
**Subject: Re:** ████████████
**Date:** 5. October 2021 at 10:29:43 GMT-6
**To:** Katia Meier <kmeier@clearskymedical.com>
**Cc:** Greg Meier <hi.gregmeier@gmail.com>, Dana Kohls
<dana.kohls@aspenacademy.org>, Corey Sampson
<corey.sampson@aspenacademy.org>, John Woodward
<john.woodward@aspenacademy.org>

Katija,
The only reason that ████ wouldn't be wearing the mask that you sent him in would
be because he lost it/misplaced it at recess or lunch and needed a replacement one
to get back in the building.  We do not have the capacity to manage your family's
personal preference of mask type for ████ and ensure he's adhering to your wishes
on it. That's between you and him. What we will do is ensure that, if they don't have
a mask, that we will give him the masks that we have available to distribute.
Per the newsletter, this will be the last week that those masks will be handed out
gratis. It's simply become an exorbitant cost that we can't sustain.

It's occurs as both unkind and a completely unreasonable jump of logic to accuse
the school of "creating an environment that makes him feel safer going
against his parents advice." To intimate that

My suggestion is as it has been to families: put a safe break lanyard on your
child's mask or put back up masks of your choosing in his pockets.

This will be forwarded to ████s teachers so that, per your wish, they tell him
that his parents have conveyed that he is to wear the cloth masks of your
preference that you send him to school with and that he is expected to manage
his mask so that he can be in compliance with your rules. Again, we don't have
capacity to manage this on a daily basis - ensuring that all our students are
masked in adherence with Health Department regs is what we can and do
manage.

Kindest regards,
Kristina

# ATTACHMENT 1C

Attachment 1C: October 5, 2021 at 3:42 PM, follow-up email from Katia Meier to Kristina Scala requesting answers to specific questions

(to which there has been no response from anyone at Aspen Academy, except Attachment 2 below)

**From:** Katia Meier <kmeier@clearskymedical.com>
**Subject: RE:** ███████████
**Date:** 5. October 2021 at 15:42:53 GMT-6
**To:** Kristina Scala <kristina.scala@aspenacademy.org>
**Cc:** Greg Meier <hi.gregmeier@gmail.com>, Dana Kohls
<dana.kohls@aspenacademy.org>, Corey Sampson
<corey.sampson@aspenacademy.org>, John Woodward
<john.woodward@aspenacademy.org>

Kristina,



I don't think you are correctly informed as to the occurrence of today. ███████ had a mask in his school bag, as he always does, but he feels somewhat pressured or coerced into wearing something else than what we provide for him. He did not forget his mask.

I suggest that we have a meeting with him so he can explain to you how he feels about this. He was crying one day when I picked him up in 2020 after school, he was upset because he was told at school that both of his parents are going to die because we have people contact as a doctor and a pilot. You seem to be aware, as I captured from the townhall address you gave at the beginning of the school year, and if not you are made aware of the fact now, that this current situation is creating medical and psychological problems in many children and also in our son. You are aware of ███████ ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

It is rather unfortunate and troublesome that I am being called "unkind"

or " unreasonable " for pointing out a situation that was created at your school today in front of my son by one of your staff, instead of fixing it. My parental authority and decision making was questioned and undermined in front of my son by the person who came and interrupted us talking about the mask, which is creating the exact environment that I was pointing out, the child going against the parents' wishes. Through this unfortunate interaction, a conflict was created between the parents' authority and what ████ perceives as the schools regulations, even though there might be none. It is rather "unreasonable" and "unkind", if not completely out of his role and function to address me in the way he did today in front of my son, instead of helping to fix the problem at hand.

I appreciate that you would inform all of ████'s teachers to let me know right away if he 'forgot' his mask; I have been making sure this morning as always, that he has one. I would like to be immediately notified if he does not have a mask given to him by his parents, so I can bring him one.

Apparently however, it is not a matter of him having one, it is rather a matter of him not doing what he is supposed to and your staff actively undermining my parental authority in trying to correct him on that.

I don't need you to do anything else but not to sabotage how we are trying to keep our son healthy and safe.

I would like to know the name of this person I encountered at your school today, his capacity at your school and his involvement with my son ████ and what he is licensed as and your further steps as to his interactions with me. I assume it is John Woodard, who is copied in our conversation ?

I would also like to know from you, if you or the school have received any state, federal or otherwise funding with the condition to have the school comply with the mask wearing. Please also let me know what you are doing to capture, address and mitigate the medical and psychological damage that occur from these measures that go way beyond just undermining parental authority.


Kindest regards,


Katia Meier MD

# *ATTACHMENT 2A*

Attachment 2A: October 6, 2021 at 1:25 PM, Kristina Scala email Letter of No Trespass from Aspen Academy to Katia Meier

Begin forwarded message:

**From:** Kristina Scala <kristina.scala@aspenacademy.org>
**Subject: URGENT AND IMPORTANT: LETTER OF NO TRESPASS**
**Date:** 6. October 2021 at 13:25:00 GMT-6
**To:** Katia Meier <kmeier@clearskymedical.com>, Greg Meier <hi.gregmeier@gmail.com>
**Cc:** Corey Sampson <corey.sampson@aspenacademy.org>

TO:        Katia Meier

FROM:    Kristina Scala, President, Aspen Academy

DATE:     October 6, 2021

Subject:    LETTER OF NO TRESPASS to Katia Meier

As a result of your behavior that disrupted class and caused both students and staff insecurity with regard to their safety both yesterday, October 5, and today, October 6, you are no longer permitted to come onto the Aspen Academy campus at any time for any purpose. This letter, a copy of which has been provided to our school resource officer, is intended to formally advise you that you have no right, either expressed or implied, to be IN or ON the property located at 5859 South University Boulevard, Greenwood Village, CO at any time whatsoever and for whatever purpose. Should you not adhere to these directions, the school will have no choice but to pursue all remedies that are available by law, including criminal prosecution. In addition, the school will immediately require the withdrawal of your child ████ and prohibit his continued attendance at Aspen Academy.

████'s father may drop off and pick up ████ on the campus.

Any parent-teacher conferences scheduled with your family will occur via zoom and will include an administrator.

The school and its students will adhere to the established and communicated mask mandate while indoors.  If that is not amenable to you, you are encouraged to immediately withdraw ████ from Aspen Academy.

Thank you,


Kristina Scala


Kind regards,

Kristian Scala  Founder and
President
|t 303.346.3500|m 303.818.8555
|www.aspenacademy.org

*ATTACHMENT 2B*

211006 1325 emailed Aspen Academy Letter of No Trespass to Katia

**From:** Kristina Scala <kristina.scala@aspenacademy.org>
**Sent:** Wednesday, October 6, 2021 1:25 PM
**To:** Katia Meier <kmeier@clearskymedical.com>; Greg Meier <hi.gregmeier@gmail.com>
**Cc:** Corey Sampson <corey.sampson@aspenacademy.org>
**Subject:** URGENT AND IMPORTANT: LETTER OF NO TRESPASS
**Importance:** High

TO:         Katia Meier

FROM:       Kristina Scala, President, Aspen Academy

DATE:       October 6, 2021

Subject:    LETTER OF NO TRESPASS to Katia Meier

As a result of your behavior that disrupted class and caused both students and staff insecurity with regard to their safety both yesterday, October 5, and today, October 6, you are no longer permitted to come onto the Aspen Academy campus at any time for any purpose. This letter, a copy of which has been provided to our school resource officer, is intended to formally advise you that you have no right, either expressed or implied, to be IN or ON the property located at 5859 South University Boulevard, Greenwood Village, CO at any time whatsoever and for whatever purpose. Should you not adhere to these directions, the school will have no choice but to pursue all remedies that are available by law, including criminal prosecution. In addition, the school will immediately require the withdrawal of your child ███ and prohibit his continued attendance at Aspen Academy.

███s father may drop off and pick up ███ on the campus.

Any parent-teacher conferences scheduled with your family will occur via zoom and will include an administrator.

The school and its students will adhere to the established and communicated mask mandate while indoors. If that is not amenable to you, you are encouraged to immediately withdraw ███ from Aspen Academy.

Thank you,

Kristina Scala

Kind regards,



Kristina Scala **Founder and President**

| t. 303.346.3500 | m. 303.618.8555

| www.aspenacademy.org



   

# ATTACHMENT 3

Attachment 3: October 7, 2021 at 4:51 PM, Katia Meier email response (which specifically requests delivery of a copy to each member of the Aspen Academy Board of Trustees) to the October 6, 2021 Letter of No Trespass from Aspen Academy (to which there has been no response from anyone at Aspen Academy)

**From:** Katia Meier <kmeier@clearskymedical.com>
**Subject: Urgent and important**
**Date:** 7. October 2021 at 16:51:58 GMT-6
**To:** Kristina Scala <kristina.scala@aspenacademy.org>,
'"Corey.Sampson@aspenacademy.org"'
<Corey.Sampson@aspenacademy.org>, Greg Meier
<hi.gregmeier@gmail.com>

Kristina -

I am stunned by the "Letter of No Trespass" I received from you

today, October 6th 2021, delivered by courier to my office and via email.

It appears to me that instead of responding to the questions in my

email to you October 5th 2021, at 3:43 pm, you have chosen to make false, slanderous and defamatory accusations against me in your

October 6th 2021 letter as a pretext to exclude me from school property.

Your "Letter of No Trespass" is a gross overreaction to the events of

October the 5th and 6th as follows:

████ forgot his water bottle in my car when I dropped him off in the

morning of October 5th and I took it and went inside and asked at the front desk where his classroom was, and I was told it is downstairs. I went downstairs and looked for his class which I found

after asking a 2nd person in the hallway. ████ saw me coming right away and stepped out of the classroom. I gave him his water bottle and noticed at the same time that he was wearing a different mask than the one he told me he was going to wear before I had dropped

him off that morning and which he had in his bag.

I asked ████ why he did not wear the mask that he had had in his bag and said he was going to wear, and it seemed that he was intimidated into wearing the mask he was given by the school for some reason. I told him this one was not the one he should be wearing due to health reasons and gave him an extra one I had for him to wear. We exchanged masks on him and then he was supposed to go back in the room, but we were interrupted by Mr. Justin (not sure if this was his name or what his last name was, as he never introduced himself to me. Mr. Corey referred to him with that first name later that same day) who started questioning me in front of my son as to why ████ could not wear the mask I took from him.

I told him it was due to medical reasons, and he asked what medical reasons, I told him I don't know why I should discuss my son's private medical information with him, after which he responded that he had been a nurse (or something similar) in the military in the past and demanded to know. I was a bit dumfounded as to that reasoning, I told him that I was a physician and ████'s mother and did explain to him some of the reasons which he scoffed at, which was odd and uncalled for (while I was wondering why I needed to discuss my son's medical situation with a random person at ████'s school who never even properly introduced himself and never explained his role in ████'s education nor why he came to talk to us). Mr. Justin questioned my parental decision making and ████'s medical needs in front of ████, undermining my parental authority, parental and physician decision making and undermined my son's respect for me as his parent. It was highly disturbing to me and also most likely to our son ████.

When ████ went back into his class, I started walking out and he accompanied me, walking out with me the entire way as if to make sure I found the way out, despite the fact that ████ had been there for many years, and I already knew the way. It was a very hostile and unfriendly environment for me as a parent, and in no way did I feel supported by him but rather felt that he was acting in an adversary way towards me as a parent, as if he thought he was playing a more important part in ████'s upbringing than me as ████'s mother. I asked him if he was aware that what they are doing is considered child abuse by many, even health professionals and he responded that all that was done was for the safety of everyone to which I then responded "yes, sure it is" and mumbled to myself as I was walking out "such an idiot" and we said "have a good day" to each other as I

departed.

When I picked up ████ the same day at 4 pm, Mr. Corey was already waiting for me in the parking lot who had left a voice message for me earlier that day asking for more specifics as to what had happened earlier that morning. We greeted each other and I said I was about to call him back but that I could talk to him now if that's ok. He said that he had not read the email I had send to him and Kristina yet. We had a conversation in the parking lot in which he never actually asked me as to what had happened but seemed to have an already preconceived judgement about what had happened by questioning my 'conduct' in front of my son who was at that time sitting in the back of the car overhearing everything.

Mr. Corey further questioned ████'s medical reason to wear a specific mask even though I told him that a letter by a physician could be furnished as to the nature of it and that Tri-County Health and the Governor's order allow for a medical mask exemption, which is denied by the school. Unlike the masks Aspen Academy is furnishing, the masks we have been giving ████ are the type actually specified and recommended by Tri-County Health: "two layers of washable, breathable fabric".

He said "we can look at that" as if he or anyone at the school was going to be able to judge a medical letters validity written by a physician who had actually examined ████ and knows ████'s medical history. I asked him what part of my conduct specifically was objectionable, to which he had no response. I asked him if it was forbidden for me to see my son and he said, "no, of course not". He asked to see ████'s face mask and wanted to take one with him to have it "approved". I gave one of ████'s face masks to him and showed him what they look like putting them on my own face and he found nothing wrong with the way they looked. I told him that we had used the same masks while flying and in various airports and on vacation and no one had objected to them. He also asked me about my immunity status which I told him (despite that being none of his business) and he said "see, we can come to an agreement."

I also told him that my son's health is paramount to anything else to me and that I would always make sure that he is safe and had what he needed, and we left it at that.

The next morning my son had promised to me that he had water in his bag, but I found out while driving and almost at the school that that was not the case. I dropped him off and parked right away to

ask Mr. Corey about the mask he took from me the evening before, and at the same time bring ████ my water bottle which I had in the car. I saw Mr. Corey, we greeted each other, and I asked him to please give me back ████ face mask. The night before I had had a conversation with ████'s father Greg talking about the situation and to make sure that he was still in support of ████ wearing the face masks I had chosen for him. In my conversation with ████'s father, we discovered that ████ had misplaced his other three face masks that he was supposed to have at his father's house and Greg asked me to buy more of them because ████ kept losing or misplacing them. These masks get washed or should get washed after each use and ████ always has one extra, in case he loses one while at school or gets one dirty. I explained to Mr. Corey that we were short on masks and needed the one back that I had given him. He said he was going to get it for me, and when he saw that I had an extra water bottle he wanted to bring that to Noah, which I agreed to. Children were still arriving at the parking lot at that time of 8.20 am and since school had not officially started yet for ████, I thought I could also make sure that ████ was wearing the right face mask because I was told by Kristina Scala in an email the day before, that it was not the school's responsibility nor did the school have the capacity to make sure that ████ was wearing the right mask. So, it was clearly my own duty to make sure that ████ is ok by myself, which of course I have no problem in doing. I went towards his classroom and wanted to peek through the large window to see what mask he was wearing.

Mr. Corey came back and interfered with my checking on ████ while I was still in the hallway, and acted very unkind and insinuated that my intention was to "disrupt class" which was not at all my intention and class had not even started at that time, he said that I could not see ████ right now and I simply responded "ok, I hope he is wearing the right mask" while turning around to which Mr. Corey responded, "I don't know". He said I had to follow school policy, insinuating that I had violated any without telling me which one and I said "of course, why don't you send me your school policies via e-mail and I'll make sure that I read them carefully." Instead of saying that he would email me the school policies, he responded: "you will hear from us very soon" in a rather threatening manner. We wished each other a good day and I left the school building. The same day I got the
"Letter of No Trespass" at 2:55 pm which explained Mr. Corey's threatening tone.

My conduct at the school on October 5th and 6th 2021 was at all

times peaceful and non-threatening in all aspects. On October the

6th, I was not even anywhere close to ████'s classroom, on October

5th I approached his classroom but never entered it nor did anything but wait for ████ calmly outside who came out for me right away as soon as he saw me approaching. I had no contact with ████'s classroom teachers nor with any of his classmates on either day. My sole focus and intention was to make sure that ████ had what he needed to be safe and well. During any of the conversations with any of the school staff, I never so much as even raised my voice but remained calm, even in the face of hostile accusations. But I did state my position in non-negotiable terms that ████ is to wear the face mask which I require, not the ones provided by the school.

Because this treatment by Mr. Justin and Mr. Corey disturbed me, I sent two letters to you Kristina - the first was an urgent appeal for help after my first encounter with Mr. Justin, and I asked for a meeting, but was ignored. Your response had very little to do with the actual content of my letter. In my response I asked for a meeting again to which you responded with a "Letter of No Trespass" instead of anything responsive or constructive. So you not only denied due process, but you exponentially elevated the level of hostility toward me for no good reason. Your motto to "Be Kind, Do Good, Make the World a Better Place" is definitely not what I have experienced recently from you and your staff.

For the record, at no time did I disrupt any class and at no time did I cause any students or staff insecurity with regard to their safety on

either October 5th or 6th 2021. Those accusations are false, malicious and calculated to wrongfully disparage my person and my reputation in the school community. Your accusations have no basis in fact.

I demand to know exactly who has accused me of "behavior that disrupted class and caused both students and staff insecurity with regard to their safety ". This is a serious accusation to which I will fully respond. To that end, please furnish me a copy of my accuser's written statement so that I have the opportunity to face my accuser and respond in accordance with the basic right to due process to which I am entitled under the United States and Colorado Constitutions.

The last paragraph of your letter misrepresents what is at issue between us. Both ████ and I have adhered "to the established and communicated mask mandates while indoors" at Aspen Academy at

all times. The issue is the lack of respect for my authority as a parent to verify to my satisfaction that ████ is wearing the mask I furnish for him, and to verify to my satisfaction that school personnel are in no way interfering with my requirements for ████ in that regard.

Your failure to accommodate my requirements that ████ wear the mask I furnish and not the mask the school furnishes is unreasonable under the circumstances and completely unacceptable to me.

And so is your "encouragement "that I "immediately withdraw ████ from Aspen Academy."

Your "Letter of No Trespass" shows that you have wildly overreacted to my refusal to allow you to undermine my son's respect for me, and his father (who agrees on the type of mask ████ is to wear), as the primary decision makers with regards to his health care, not the school.

This letter is formal notice to you of the following facts.

Your "Letter of No Trespass" constitutes unwarranted interference in my parent-child relationship with ████, in violation of my parental rights and authority protected by the United States Constitution, the Colorado Constitution, and federal and state laws, as well as ████'s protected rights in his child-parent relationship with me and his father.

Aspen Academy's enforcement of the Tri-County Health "mandate" for face covering constitutes prescribing a medical treatment or protocol and unauthorized practice of medicine without a license.

Aspen Academy staff personnel who "mandate" what type of mask a student wears as a face covering are engaged in the practice of medicine without a license.

I direct you to do each and all of the following.

1. Furnish to me in writing the name, title and contact information of each of your superiors or overseers so that I may communicate with them directly about your gross overreaction to my conduct at the school on October 5 and 6, 2021.

2. Rescind in writing your October 6th 2021 "Letter of No Trespass" to me and the conditions stated therein in their entirety.

3. Apologize in writing for the false, malicious, slanderous and defamatory accusations in your October 6th 2021 "Letter of No Trespass" to me.

4. Furnish a copy of your written rescission and apology to your school resource officer and any and all third parties with whom you communicated about your October 6th 2021 "Letter of No Trespass" to me.

5. Furnish to me in writing a list of all third persons with whom you communicated about your October 6th 2021 "Letter of No Trespass" to me, along with their contact information.

6. Furnish to me in writing as response to each and every one of my questions in my email to you October 5th 2021, at 3:43 pm.

7. Recognize and submit to my authority, and that of his father, as ████s parents who are primarily responsible for care, custody and control of ████ and his health care decisions including, but not limited to, what mask he will wear, if any, while at Aspen Academy.

8. Lastly, I direct you to furnish a copy of this letter to each member of the Board of Trustees as noted below my signature line. I would have done it myself, but their contact information was not furnished on the school website.

Should you not adhere to these directions, I will pursue all remedies that are available by law, including criminal prosecution.

In closing, until just recently I have enjoyed a peaceful, collaborative and mutually respectful relationship with Aspen Academy staff personnel in ████s education and socialization. I want to return to that peaceful, collaborative and mutually respectful relationship with Aspen Academy staff personnel if at all possible. But make no mistake about it, I will not tolerate you excluding me from the school property when I did nothing to deserve it.

I expect a reply to this letter by 5 pm on Friday the 8th of October.

Respectfully submitted,

/s/

Katia Meier MD


Xc in care of Kristina Scala

Suzanne Goodspeed,


        Wayne Guerra, M.D.

James Johnson

Jack Keenan

Lew Kling

Corinne Lengsfeld

Brian Meegan

James Park

Kristina Scala

Arjun Sen

Brad Tucker

Lori Taylor

Tim Taylor

Darryl Watters

George Sparks

# ATTACHMENT 4

Attachment 4: October 26, 2021 at 3:33 PM, Katia Meier email to Kristina Scala again reporting a problem about the mask ▨▨▨▨ was wearing at Aspen Academy and requesting answers to the still unanswered specific questions from October 5 and 6, 2021 (to which there has been no response from anyone at Aspen Academy)

> Begin forwarded message:
>
> **From: Katia Meier <kmeier@clearskymedical.com>**
> **Subject: Incident October the 25th at school**
> **Date:** 26. October 2021 at 15:33:26 GMT-6
> **To:** Kristina Scala <kristina.scala@aspenacademy.org>,
> "'Corey.Sampson@aspenacademy.org'"
> <Corey.Sampson@aspenacademy.org>, Justin Wimbish
> <justin.wimbish@aspenacademy.org>, "hi.gregmeier@gmail.com"
> <hi.gregmeier@gmail.com>

Kristina,

I am writing to inform you that when I picked up my son, ▨▨▨ yesterday October the 25th after school he was wearing the black paper mask furnished by the school. As I have previously told you in writing and personally told the middle school principal, Mr. Corey Sampson and Mr. Wimbish, ▨▨▨ is not to wear those masks for medical reasons.

When I asked ▨▨▨ why he was wearing the mask I have instructed him not to wear, ▨▨▨ told me that he was told by a teacher, whose name he does not know, to wear this mask instead of the ones his father and I furnish for him.

The staff of your school repeatedly ignores that and even seems to actively make ▨▨▨ wear a mask he is not to wear for medical reasons; that puts ▨▨▨'s health at risk and needlessly causes conflict, stress, and confusion for him. You have previously told me that it was the parent's responsibility to furnish a mask, that is what we are doing. So then why is ▨▨▨ repeatedly directed to wear something else? The masks we furnish meet the specifications of the Tri County Health Department as one of the preferred versions of a washable, breathable, double layered fabric. The masks you furnish do not appear to meet those Tri County Health Department specifications.

What is it going to take for you and your staff to follow the instructions ▨▨▨'s Father and I have given him to wear only the masks we furnish?

You are not health professionals, and when you direct ▨▨▨ to wear a mask that goes against his health professionals' recommendations, you are practicing medicine without a license and are putting our son's health in harm's way for no good reason. And when you or your staff direct ▨▨▨ to wear any mask other than the ones his father and I have directed him to wear, you are undermining our parental authority to direct ▨▨▨'s health care. Under these circumstances, your interference with our parent-child relationships with ▨▨▨ is unwarranted and should be stopped

immediately. Please share a copy of this email with Mr. Sampson, Mr. Wimbish, and any other staff members who should be aware of the masks which ████'s Father and I require him to wear.

Also, on October the 5th I sent you an email requesting a written copy of all school policies and have received nothing from you in response.

Also, on October the 5th I sent you an email in which I asked if the school is receiving money to enforce the mask "mandate" and have received nothing from you in response.

Instead of responding to my requests for information with the information I requested, you issued your Letter of No Trespass dated October the 6th.

I now ask you again for:

-a written copy of all school policies; and

-full disclosure if the school is receiving money or any other thing of value to enforce the mask "mandate".

Sincerely,


Katia Meier

# ATTACHMENT 5A

Attachment 5A: February 9, 2022 at 1:37 PM, email from Katia Meier to Kristina Scala and others regarding (1) Katia Meier's objections to ▮▮▮▮▮▮ being tested for COVID at Aspen Academy, and (2) inquiring if ▮▮▮▮ was subjected to COVID testing at Aspen Academy

**From:** Katia Meier <kmeier@clearskymedical.com>
**Subject: Notice via electronic mail regarding ▮▮▮▮▮▮ to his school**
**Date:** 9. February 2022 at 13:38:02 GMT-7
**To:** Kristina Scala <kristina.scala@aspenacademy.org>, '"Corey.Sampson@aspenacademy.org"' <Corey.Sampson@aspenacademy.org>, Greg Meier <hi.gregmeier@gmail.com>, 'Leonard Higdon' <lhigdon@lrhlaw.com>

To Aspen Academy
February 9, 2022

To Kristina Scala, kristina.scala@aspenacademy.org

To Cory Sampson, Corey.Sampson@aspenacademy.org

To Greg Meier, Hi.gregmeier@gmail.com

To Whom It May Concern

Mr. Meier has advised today that has signed ▮▮▮▮ up for COVID testing by Aspen Academy.

I have communicated with Mr. Meier regarding my objection to such testing, which is a matter governed by our court-ordered parenting plan. Pursuant to those orders, the decision to submit to this medical procedure is a joint decision requiring consent from both parents and Mr. Meier's unilateral authorization is not consistent with the court's orders.

To be very clear, at this time, I do not give my consent.

Mr. Meier and I are currently working together to address some additional medical issues that he has raised and we will discuss this matter as well. I will advise concerning any change in my present position; however, to be clear, I am directing that no such testing be administered to ▮▮▮▮ without my consent.

Please confirm your receipt of this correspondence and your acknowledgement of my wishes in this regard so that I might be assured, and also avoid the need for further follow up communications over this matter. Further, if ▮▮▮▮ has been subjected to COVID testing at the direction of Aspen Academy (and pursuant to Mr. Meier's authorization), please advise.

Thank you for your immediate attention to this matter.

Best wishes,

Katia Meier MD.

# ATTACHMENT 5B

Attachment 5B: February 11, 2022 at 11:20 AM, email from Kristina Scala to Katia Meier advising only (1) that ▨▨▨▨▨▨ has been removed from COVID testing

**From:** Kristina Scala <kristina.scala@aspenacademy.org>
**Sent:** Friday, February 11, 2022 11:20 AM
**To:** Katia Meier <kmeier@clearskymedical.com>; Corey Sampson <corey.sampson@aspenacademy.org>; Greg Meier <hi.gregmeier@gmail.com>; Leonard Higdon <lhigdon@lrhlaw.com>
**Cc:** Maria Groeschl <maria.groeschl@aspenacademy.org>; Cathy Shematek <cathy.shematek@aspenacademy.org>
**Subject:** RE: Notice via electronic mail regarding ▨▨▨▨▨▨ to his school

Katia,

Our Health and Safety Managers have been notified of this change and will inform the third party testers.

We have take-home Covid tests available to parents if they'd like to administer them at home, but ▨▨▨▨ will be pulled from the authorized list for the state sponsored optional testing.

The school will not get in the middle of a disagreement between a child's parents regarding health care.

Kind regards,

Kristina

**From:** Katia Meier <kmeier@clearskymedical.com>
**Sent:** Wednesday, February 9, 2022 1:38 PM
**To:** Kristina Scala <kristina.scala@aspenacademy.org>; 'Corey.Sampson@aspenacademy.org' <Corey.Sampson@aspenacademy.org>; Greg Meier <hi.gregmeier@gmail.com>; 'Leonard Higdon' <lhigdon@lrhlaw.com>
**Subject:** Notice via electronic mail regarding ▨▨▨▨▨▨ to his school
**Importance:** High

To Aspen Academy
February 9, 2022

To Kristina Scala, kristina.scala@aspenacademy.org

Kristina

**From:** Katia Meier <kmeier@clearskymedical.com>
**Sent:** Wednesday, February 9, 2022 1:38 PM
**To:** Kristina Scala <kristina.scala@aspenacademy.org>;
'Corey.Sampson@aspenacademy.org'
<Corey.Sampson@aspenacademy.org>; Greg Meier
<hi.gregmeier@gmail.com>; 'Leonard Higdon' <lhigdon@lrhlaw.com>
**Subject:** Notice via electronic mail regarding ███████ to his school
**Importance:** High

To Aspen Academy
February 9, 2022

To Kristina Scala, kristina.scala@aspenacademy.org

To Cory Sampson, Corey.Sampson@aspenacademy.org

To Greg Meier, Hi.gregmeier@gmail.com

To Whom It May Concern

Mr. Meier has advised today that has signed ███████ up for COVID testing by Aspen Academy.

I have communicated with Mr. Meier regarding my objection to such testing, which is a matter governed by our court-ordered parenting plan. Pursuant to those orders, the decision to submit to this medical procedure is a joint decision requiring consent from both parents and Mr. Meier's unilateral authorization is not consistent with the court's orders.

To be very clear, at this time, I do not give my consent.

Mr. Meier and I are currently working together to address some additional medical issues that he has raised and we will discuss this matter as well. I will advise concerning any change in my present position; however, to be clear, I am directing that no such testing be administered to ███████ without my consent.

Please confirm your receipt of this correspondence and your acknowledgement of my wishes in this regard so that I might be assured, and also avoid the need for further follow up communications over this matter. Further, if ███████ has been subjected to COVID testing at the direction of Aspen Academy (and pursuant to Mr. Meier's authorization), please advise.

Thank you for your immediate attention to this matter.

Best wishes,

Katia Meier MD.

# ATTACHMENT 5C

Attachment 5 C: February 12, 2022 at 6:44 PM, Dr. Meier mail to Kristina Scala inquiring for a second time if ███████ was subjected to COVID testing at Aspen Academy ( to which there has been no response from anyone Aspen Academy)

Begin forwarded message:

**From:** Katia Meier <kmeier@clearskymedical.com>
**Subject: Re: Notice via electronic mail regarding ███████████ to his school**
**Date:** 12. February 2022 at 18:44:41 GMT-7
**To:** Kristina Scala <kristina.scala@aspenacademy.org>
**Cc:** Corey Sampson <corey.sampson@aspenacademy.org>, Greg Meier <hi.gregmeier@gmail.com>, Leonard Higdon <lhigdon@lrhlaw.com>, Maria Groeschl <maria.groeschl@aspenacademy.org>, Cathy Shematek <cathy.shematek@aspenacademy.org>

Thank you, I appreciate that you recognize that Aspen Academy has no authority to test ███████ for COVID without the prior written consent of both of ███████'s parents.

I did ask you if he did get tested before at the school and you have not answered that question yet, I would appreciate to know if ███████ did undergo COVID testing at the school already.

Sincerely,

Katia Meier M.D.

On 11. Feb 2022, at 11:19, Kristina Scala <kristina.scala@aspenacademy.org> wrote:

Katia,

Our Health and Safety Managers have been notified of this change and will inform the third party testers.

We have take-home Covid tests available to parents if they'd like to administer them at home, but ███████ will be pulled from the authorized list for the state sponsored optional testing.

The school will not get in the middle of a disagreement between a child's parents regarding health care.

Kind regards,

To Cory Sampson, Corey.Sampson@aspenacademy.org

To Greg Meier, Hi.gregmeier@gmail.com

To Whom It May Concern

Mr. Meier has advised today that has signed ▇▇▇ up for COVID testing by
Aspen Academy.

I have communicated with Mr. Meier regarding my objection to such
testing, which is a matter governed by our court-ordered parenting plan.
Pursuant to those orders, the decision to submit to this medical
procedure is a joint decision requiring consent from both parents and Mr.
Meier's unilateral authorization is not consistent with the court's orders.

To be very clear, at this time, I do not give my consent.

Mr. Meier and I are currently working together to address some
additional medical issues that he has raised and we will discuss this matter
as well. I will advise concerning any change in my present position;
however, to be clear, I am directing that no such testing be administered
to ▇▇▇ without my consent.

Please confirm your receipt of this correspondence and your
acknowledgement of my wishes in this regard so that I might be assured,
and also avoid the need for further follow up communications over this
matter. Further, if ▇▇▇ has been subjected to COVID testing at the
direction of Aspen Academy (and pursuant to Mr. Meier's authorization),
please advise.

Thank you for your immediate attention to this matter.

Best wishes,

Katia Meier MD.